[Crim. No. 3373.   Third Dist.   Apr. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER NASH, Defendant and Appellant.

Walter Nash, in pro. per., and Edwin Verzyl, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Robert E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

BRAY, J.*—Defendant appeals from judgment after jury verdict finding defendant guilty of the offense of forcible rape and from the order denying new trial.

QUESTIONS PRESENTED

1. No error in mentioning name of assailant in testimony of fresh complaint.

2. Defendant's adoptive admissions were properly admitted. (*Escobedo-Dorado* not applicable.)

3. No error in refusal to give certain instructions.

4. Verdict well supported by the evidence.

5. Police were entitled to enter defendant's apartment.

6. No error in bringing out defendant's prior record.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

RECORD

On April 19, 1962, defendant was convicted by a jury of the crime of forcible rape and judgment entered. His application for probation and his motion for new trial were denied. From then on, defendant has kept the federal and state courts busy with unsuccessful appeals, motions and petitions until October 11, 1967, when this court granted defendant's motion to recall remittitur and to reinstate his appeal from the judgment of conviction and from the order denying new trial. The court also appointed counsel to represent him on the appeal.

The following statement of the circumstances of the crime taken from *People* v. *Nash* (1963) 216 Cal.App.2d 491, 492 [31 Cal.Rptr. 195], will be hereinafter amplified, if necessary, to point up defendant's contentions: "The prosecutrix, C—— R——, an 18-year-old girl testified that defendant, while driving her in his automobile, ostensibly to take her to her sister's home, stopped the car, asked her to engage in sexual intercourse, and when she refused, threatened to cut her with a razor. The girl still refused to submit and sought to escape. She was overtaken and returned to the car where she was overpowered and raped. Returning to her home, she immediately telephoned her mother in the presence of her grandmother, and informed her mother of the incident. Her testimony relating to the telephone call was corroborated by the mother and by the grandmother. The mother immediately called the police. When the police approached defendant later that night he denied that he even knew C—— R——. He stated he had not left his home since 5 p.m. that evening. The police, however, found fresh mud on the shoes in his room and found that the motor of defendant's automobile was still warm. (It was a cold, wet night.)"

1. Mention of defendant's name in testimony of fresh complaint.

■ The prosecutrix, her mother and Patrolman Taylor, who went with the prosecutrix to defendant's apartment immediately after the mother notified the police of the affair, in testifying of fresh complaint by prosecutrix, all stated that she named defendant as her assailant. Relying on *People* v. *Wilmot* (1903) 139 Cal. 103 [72 P. 838], and *People* v. *Fernandez* (1906) 4 Cal.App. 314 [87 P. 1112], holding that testimony as to the naming of the assailant by a prosecutrix in making fresh complaint is not admissible, defendant contends that the court erred in admitting evidence concern-

ing the prosecutrix' naming of defendant. The rule cited in the above mentioned cases is no longer the law. In *People* v. *Burton* (1961) 55 Cal.2d 328, 352 [11 Cal.Rptr. 65, 359 P.2d 433], the court expressly overruled *Wilmot* and *Fernandez* and other cases in which similar holdings appear. The court stated (at p. 351) that *"the alleged victim's statement of the nature of the offense and the identity of the asserted offender, without details, is proper."* In the instant case, the testimony of fresh complaint was limited to the nature of the offense (rape) and the identity of defendant as the assailant.

Additionally, defendant made no objection to the admission of the testimony. Under the rule then applicable at the trial, such failure to object bars him from urging the matter on appeal. (*People* v. *Corrigan* (1957) 48 Cal.2d 551, 556 [310 P.2d 953].)

2. Defendant's adoptive admissions.

As this is a reinstated appeal from a judgment which had become final prior to *Escobedo* and *Dorado,* the rule of those cases is not applicable, and we must consider the admissibility of defendant's adoptive admission in the light of the rules which applied at the time of the trial.[1] (See *People* v. *Rivers* (1967) 66 Cal.2d 1000, 1005 [59 Cal.Rptr. 851, 429 P.2d 171]; *In re Lopez* (1965) 62 Cal.2d 368, 372 [42 Cal. Rptr. 188, 398 P.2d 380].)

*People* v. *Simmons* (1946) 28 Cal.2d 699 [172 P.2d 18], and *People* v. *Romano* (1961) 197 Cal.App.2d 622, 635 [17 Cal. Rptr. 399], hereinafter cited, defining the rule of adoptive admissions, supply the governing rule as it existed at the time of the trial of the instant case, and under such rule the adoptive admissions herein discussed were admissible. Upon entering defendant's apartment with the intention of arresting him on the prosecutrix' complaint, Officer Taylor saw defendant standing before him. Taylor asked defendant if he were Mr. Nash. Defendant replied that he was. The officer then stated that defendant was accused of raping the prosecutrix and asked him if he knew her. Defendant replied that he did not. When asked of his whereabouts on that particular evening, defendant replied that he had not been out of the house since 5 p.m. of the previous afternoon. The officer then arrested defendant and took him out to the patrol car where the prosecutrix was seated. Although she identified defendant as her assailant, he denied knowing her. At the trial defendant

---

[1]The judgment in the case at bench became final January 13, 1964. *Escobedo* was decided in June 1964 and *Dorado* January 1, 1965.

testified to knowing her and to having intercourse with her on the night and place in question but claimed that it was with her consent. ■ Defendant attacks the admissibility of his statements to the officer under the rule that if an accused responds to an accusatory statement with a flat denial, his statement is not admissible. (See *People* v. *Simmons* (1946) *supra,* 28 Cal.2d at p. 712.) However, the situation in the case at bench comes within he rule that if an accused responds to an accusatory statement with an evasive or unequivocal or untrue reply, his statement is admissible (see *People* v. *Simmons,* p. 712). As said in *People* v. *Romano* (1961) *supra,* 197 Cal.App.2d at page 635: "The ground upon which such evidence is admitted is that the conduct of a defendant in the face of an accusatory statement may aid the jury in determining his guilt or innocence. [Citations.]

■ "If a denial of guilt is coupled with additional statements or equivocal or evasive responses the evidence is properly received. [Citations.] ■ And where, besides a denial, the defendant makes an assertion of fact which is contradicted by other evidence or makes false, evasive or contradictory statements, the evidence is admissible for such weight as the trier of fact may give it."

■ Defendant contends he was compelled to be a witness against him in that the court admitted his extrajudicial statements. These statements, he argues, contained only an accusation followed by a specific denial and were therefore inadmissible. But the denial here was coupled with equivocal behavior and additional demonstrably false statements. The evidence was admissible. (*People* v. *Romano, supra,* 197 Cal.App.2d 622, 635.)

Defendant in denying the accusation of rape falsely stated that he did not know the victim and that he had not been out of the house since the previous afternoon.

■ Defendant now contends further that as defendant was under arrest, his untrue statements cannot be considered to have been free and voluntary. He made no objection on that ground to the admission of his statements. His failure to do so consitutes a waiver on appeal of any contention in this regard. (*People* v. *Millum* (1954) 42 Cal.2d 524, 528 [267 P.2d 1039].)

3. Instructions.

■ Defendant contends that the trial court erred in not giving three instructions, none of which, however, was offered

by defendant. The first instruction is a portion of CALJIC No. 30, to the effect that an accusatory statement is not received to prove its truth but to explain the conduct of the accused in the face of it and unless the jury should find that his conduct at the time indicated an admission that the accusatory statement was true, the jury should disregard the statement. In *People* v. *Chessman* (1951) 38 Cal.2d 166, 181 [238 P.2d 1001], and *People* v. *Davis* (1957) 48 Cal.2d 241, 250-251 [309 P.2d 1], the full instruction was approved.

The full instruction (as stated, defendant's contention only goes to a portion of it) has been disapproved by the CALJIC authors (1967 pocket part to CALJIC, p. 43) based upon *Griffin* v. *California*, 380 U. S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] and *People* v. *Cockrell*, 63 Cal.2d 659 [47 Cal.Rptr. 788, 408 P.2d 116], proscribing drawing an adverse inference from a failure to reply to an accusatory statement. However, the portion which it is now contended should have been given is a correct statement of the law, and had it been offered at the trial, it would have had to be given. The court did give customary instructions concerning the use of admissions.

Defendant has cited no authority for his contention that the trial court should sua sponte have given the portion of CALJIC No. 30 which he now selects. ■ The other two instructions which defendant now contends the court should have given relate to his contention that attempt to commit rape and assault to commit rape were included crimes. Under the facts of this case instructions to the effect that defendant could be found guilty of either of these offenses would have been erroneous. Either defendant committed rape or he committed no crime at all. Both the prosecutrix and defendant testified that defendant had intercourse with her. The medical evidence likewise indicated that sexual intercourse had been completed. Thus, the sole question to be determined was that of consent. If the prosecutrix did not consent, defendant could be found guilty only of rape. If she did consent, then he was not guilty of any crime (see *People* v. *Allison* (1966) 245 Cal.App.2d 568, 573 [54 Cal.Rptr. 148], holding "where the evidence would not support a finding of guilt of the lesser offense or degree—for example, where the defendant denies any complicity in the crime charged"), and an instruction on lesser included crimes would be erroneous. (See *People* v. *Garcia*. (1967) 250 Cal.App.2d 15, 17-18 [58 Cal.Rptr. 186].)

The jury obviously found that there was no consent so the

only crime of which it could find defendant guilty was that of rape.

4. Verdict supported by the evidence.

Defendant contends that the prosecutrix did not resist defendant as much as she could have and hence the jury should have found that she "more than half consented."

As stated in *People* v. *Nash* (1963) *supra*, 216 Cal.App.2d 491, 492-493, concerning the facts there, ". . . The verdict of the jury finding that defendant accomplished rape upon the girl by means of physical force or by threats of great bodily harm or both finds support in the evidence and is binding on the appellate court."

The offense of rape is committed when the victim resists the act, but her resistance is overcome by force or violence. (Pen. Code, § 261, subd. 3.) Although she must resist in fact, an extraordinary resistance is not required. The amount of resistance need only be such as to manifest her refusal to consent to the act. (*People* v. *Austin* (1961) 198 Cal.App.2d 669, 675 [18 Cal.Rptr. 209].) The prosecutrix testified that defendant hit her head against the steering wheel and twisted her arm; that she had tried to run away from him; that she had tried to fight off his advances; and that she did not consent. In determining the degree of resistance required, the relative strength of the parties and the uselessness of resistance are among the factors to be considered. (*People* v. *Austin, supra,* at p. 675.)

There were certain asserted contradictions and inconsistencies in the testimony of the prosecutrix, but her testimony as a whole was not inherently incredible. Except as to the question of consent, defendant corroborated some of her testimony. For example, he conceded the intercourse and that she was out of the car and had fallen in the mud. She said that she fell while attempting to run away from him. He claimed that she got out of the car to vomit and fell in the mud. The contradictions and inconsistencies in her testimony were for the jury to consider. It was for the jury to determine from all of the evidence in the case the ultimate fact of guilt. (See *People* v. *Rivas* (1949) 92 Cal.App.2d 663, 666 [207 P.2d 1062].)

5. Police entering defendant's apartment.

Section 844 of the Penal Code states, in pertinent part, "To make an arrest, . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to

be, after having demanded admittance and explained the purpose for which admittance is desired."

The officers had reasonable cause to arrest defendant for the prosecutrix' information gave reasonable cause to believe that a felony had been committed by defendant. (See *People* v. *Carswell* (1959) 51 Cal.2d 602, 607 [335 P.2d 99].) The officers commenced their investigation of a possible offense of rape when the victim's mother phoned them and accused defendant of raping her daughter. At approximately 2 to 3 a.m. the police picked up the victim and proceeded to defendant's residence, which the victim pointed out. She also pointed out his auto parked nearby. It hood was warm although the weather was cold and wet. The officers proceeded to defendant's apartment and commenced knocking on the door. Their knocking and the commotion they made in announcing their presence was so great that defendant's landlady, who lived in another building across an alleyway, heard the noise and went to defendant's apartment to ascertain what was happening. On learning of the reason for the noise, she gave the officers her key to the door. Having announced themselves as officers while knocking on the door, they again identified themselves. On gaining admission, they informed defendant of the charges against him.

It has been held that where, as here, the officers knock and announce themselves as police officers there is a substantial compliance with section 844. (*People* v. *Rucker* (1961) 197 Cal.App.2d 18, 23 [17 Cal.Rptr. 98].) In *People* v. *Valles* (1961) 197 Cal.App.2d 362 [17 Cal.Rptr. 204], where the defendant failed to respond to the police officer's knock on his door, and the police officer had reasonable cause to believe that defendant was in the room and broke in, it was held that the officer's failure to comply with the formal requirements of section 844 was excused and that such failure did not justify exclusion of the evidence obtained by the officer in the room.

A study of *People* v. *Rosales* (1968) 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], indicates that although ordinarily the mere identifying themselves as police officers may not be enough to warrant entry without announcing their purpose, the circumstances may excuse a failure to make such an announcement. In *Rosales* the officers went to the defendant's house to arrest him. Looking through a window and a screen door, they could see the defendant seated on a couch. At the doorway they "identified themselves to a girl" (p. 306),

opened a screen door and entered the premises but made no demand of admittance nor announcement of their purpose. The court held that the officers' actions did not comply with section 844 of the Penal Code and vitiated the arrest. Referring to the officers identifying themselves to the girl, the court said at page 302: "Such identification alone could constitute substantial compliance with section 844 *only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile.* There is nothing in the record to show that any of the occupants or even the girl knew that the officers' purpose was to arrest the defendant or *understood that they were demanding admittance.*" (Italics added.)

The circumstances in the instant case were entirely different from those in *Rosales.* Here the officers fully identified themselves and demanded entrance. The defendant could not help but know that they were demanding entrance, and he must have known that it was in connection with his assault on the girl. Under the circumstances, there was a substantial compliance with section 844 even though the officers first announced their purpose after entry. It is clear that such an announcement added to their identifying themselves before entry would not have caused defendant to admit them when the commotion they made, sufficient to disturb the landlady, did not cause him to come to the door.

In *Rosales,* at page 302-303, footnote 3, the Supreme Court referred to *People* v. *Limon* (1967) 255 Cal.App.2d 519 [63 Cal.Rptr. 91], apparently with approval, for it said that in *Limon* "the entry was held valid on the theory that the defendant had seen the officers and knew their identity and that the announcement would have been a futile gesture." So adding to their identification of themselves as peace officers in the instant case would have been an idle gesture. It is interesting to note that in *Limon* the police officers were waiting in the hallway outside the defendant's door. Limon's codefendant came out into the hall, saw the officers and retreated into the apartment. While the door was open, the officers saw Limon in the background of the room. As the codefendant tried to close the door, the officers rushed into the room. No one explained that they were police officers or their purpose, nor did anyone demand admittance. Yet, it was held that under the circumstances compliance with section 844 was not required.

In the case at bench, from the victim's statements and the fact that defendant's car was still warm, the officers

had reasonable cause to believe that defendant was in his apartment. The officers did announce that they were officers, and if they failed to completely comply with section 844 by announcing from outside the door why they were there, such fact did not make their entry illegal nor the testimony that they found defendant's clothes muddy inadmissible. The prosecutrix testified that in attempting to run away from defendant, she fell in a mud puddle and that he dragged her out of it.

Additionally, defendant did not object at the trial to the manner of entry or to any of the physical evidence obtained thereby. He thus has waived his objections thereto. (*People* v. *Robinson* (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834].)

6. Defendant's prior felony record.

As on the former appeal, defendant contends that it was error to admit on cross-examination evidence of other felony convictions (sex offenses). This evidence was admitted for the limited purpose of impeaching the credibility of defendant as a witness and the jury was so instructed. (Code Civ. Proc., § 2051; *People* v. *De Georgio* (1960) 185 Cal.App. 2d 413 [8 Cal.Rptr. 295].)

"Admission of evidence of a prior conviction for the purpose of impeachment pursuant to section 2051, Code of Civil Procedure, has been upheld in innumerable decisions in California for almost the past century." (*People* v. *Stewart* (1966) 240 Cal.App.2d 1, 7 [50 Cal.Rptr. 26]; see also *People* v. *Smith* (1966) 63 Cal.2d 779, 790 [48 Cal.Rptr. 382, 409 P.2d 222].) In *People* v. *Stewart, supra,* at page 7, the court answers a contention similar to that made by defendant herein that evidence of prior convictions which do not tend to prove the witness' dishonesty or lack of veracity should not be admitted by pointing out that the Legislature refused to follow the recommendation of the California Law Revision Commission that the law be amended to provide such restriction.

The appeal from the order denying defendant's motion for new trial is nonappealable and is dismissed.

The judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 11, 1968. Mosk, J., did not participate therein.